# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO A.G., <br><br> Plaintiff, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, *Warden of California Correctional Facility*, et al., <br><br> Defendant(s). | Case No. 1:25-cv-01925-SKO (HC) <br><br> **ORDER** <br><br> (Doc. 6) |

Fernando A.G., an immigration detainee proceeding through counsel, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.[1] (Doc. 1). Currently before the Court are Petitioner's Petition, (Doc. 1), and Motion for a Temporary Restraining Order, (Doc. 6). Per instruction from the Court, (*see* Doc. 7), Respondents have filed a combined opposition to the Motion for a Temporary Restraining Order and Answer to the Petition, in which they request a stay of the proceedings pending the outcome of the pending Ninth Circuit appeal in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). (Doc. 11). Petitioner does not

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

oppose a stay of consideration of the Petition, so long as the Court rules on the Motion for a Temporary Restraining Order. (Doc. 12 at 6).

For the reasons explained below, Petitioner's Motion for Temporary Restraining Order, which the Court converts to a Motion for Preliminary Injunction, is granted. As to the merits of the Petition, the Court will hold its consideration of the Petition in abeyance pending the Ninth Circuit's decision in *Rodriguez-Vasquez*.[2]

## I.   FACTUAL BACKGROUND

Petitioner fled his native country, Mexico, seeking asylum and applied for admission at the Otay Mesa Port of Entry in San Diego California on April 14, 2016. (Doc. 6-1 ("Gorney Decl.") ¶ 2; Doc. 11-1 ("Guzman Decl.") ¶ 13). Petitioner was processed for expedited removal but claimed a fear of returning to Mexico. (Guzman Decl. ¶ 13). Upon entry of a finding of positive fear, Petitioner was served a Notice to Appear and was detained pending removal proceedings. (*Id.*). On October 19, 2016, an Immigration Judge granted Petitioner a $5,000 bond, which allowed for the Department of Homeland Security ("DHS") to impose the Alternative to Detention Program. (Gorney Decl. ¶ 3–4; Guzman Decl. ¶ 14). Petitioner was released on October 19, 2016. (*Id.*). As conditions of his release, the Immigration Judge ordered Petitioner not to drive without a valid California Driver's License, not to use drugs or alcohol, and to have no contact with a specified individual. (*See* Doc. 11-4). Additionally, Petitioner was eventually enrolled in the Intensive Supervision Appearance Program ("ISAP"). (Guzman Decl. ¶ 15).

Petitioner has lived in Sonoma, California, since his release, where he is the primary caretaker of his elderly U.S. Citizen parents who live with him. (Gorney Decl. ¶¶ 3–4, 9). Petitioner is the sole caretaker of his father who is in hospice and confined to a wheelchair. (*Id.* ¶ 9). Without Petitioner, Petitioner's father is bedbound, as he does not have anyone to help him out of bed to access his wheelchair. (*Id.*). Petitioner has also taken on the responsibility of taking his parents to all medical appointments and handling all associated caregiving tasks.

---

[2] *See Rodriguez Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025).

1    On December 3, 2025, Petitioner was arrested upon presentation at an Immigration and
2 Customs Enforcement ("ICE") office in San Francisco for an ordered check-in. (*Id.* ¶ 5).
3 Respondents represent that Petitioner was taken into custody for
4    being an ISAP violator with the following violations: January 2, 2017: Unauthorized Travel; November 6, 2019: Missed Office Visit; March 11, 2020: Tamper Alert; Failure to Report;
5    June 17, 2020: Missed Call Back; October 16, 2020: Missed Call Back; November 15, 2021: Failed Office Visit; February 1, 2023: Failure to Report; February 6, 2024: Missed Biometric
6    Check-in; February 20, 2024: Missed Biometric Check in; January 27, 2025: Missed Check-in May 12, 2025: Missed Check-in.
7 (Guzman Decl. ¶ 16). Petitioner's counsel represents that "Petitioner had been complying with
8 the conditions of his bond release as well as ICE and ISAP check-in requirements" and that
9 "Petitioner received no notification that his bond was being revoked nor a hearing on the bond
10 redetermination issue." (Gorney Decl. ¶ 5).
11    On December 18, 2025, Petitioner filed a Petition for Writ of Habeas Corpus under 28
12 U.S.C. § 2241 challenging his detention by the DHS. (Doc. 1). The Petition asserts one claim for
13 relief, arguing that Petitioner has a fundamental liberty interest in remaining free from restraint
14 and that his detention without a bond re-determination hearing to determine whether there has
15 been a change in circumstances violates his right to due process. (*Id.* at 7). On December 20,
16 2025, Petitioner filed a Motion seeking a Temporary Restraining Order in which he requested that
17 Respondents be required to immediately release him from custody, be enjoined from re-detaining
18 him without a pre-deprivation hearing, and restrained from transferring Petitioner out of this
19 District and/or removing him from the country until the conclusion of the present action. (Doc. 6
20 at 20). Respondents have opposed the motion for a temporary restraining order. (Doc. 11).
21    **II.    CONVERSION TO A MOTION FOR PRELIMINARY INJUNCTION**
22    Given that the standard for issuing a temporary restraining order and preliminary
23 injunction is the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.*, 240 F.3d 832, 839 n.7
24 (9th Cir. 2001), and Respondents had notice and opportunity to respond in opposition, (*see* Doc.
25 11), Petitioner's Motion is converted to a Motion for Preliminary Injunction.
26 **III.    DECLINING TO HOLD REQUEST FOR INJUNCTIVE RELIEF IN ABEYANCE**
27    While it may be appropriate to defer further briefing on the Petition itself, the Court
28 declines to further hold in abeyance a decision on the preliminary injunction, given the nature of

3

1  the relief sought and Petitioner's showing. The Court also notes that the issue raised in the district
2  court in *Rodriguez Vazquez* appears to concern whether 8 U.S.C. § 1225(b)(2)(A) could be applied
3  to noncitizens living in the country for many years. *See Rodriguez Vazquez v. Bostock*, 779
4  F.Supp.3d 1239 (W.D. Wash. 2025). Here, Petitioner raises a *constitutional claim* based on the
5  liberty interest that developed during the almost decade during which he was released, and
6  Petitioner argues that the Government may not re-detain him without adequate notice and a
7  hearing in Immigration Court to determine whether his bond should have been revoked or altered.
8  (See Doc. 1 at 7; Doc. 6 at 11–20).

## IV.  LEGAL STANDARD

10  The standards for issuing a temporary restraining order and a preliminary injunction are
11  "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832,
12  839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Petitioner must show (1)
13  likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary
14  relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public
15  interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only
16  show that there are 'serious questions going to the merits'—a lesser showing than likelihood of
17  success on the merits—then a preliminary injunction may still issue if the 'balance of hardships
18  tips sharply in the plaintiff's favor,' and the other two Winter factors are satisfied." *All. for the*
19  *Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted). The Ninth Circuit
20  employs a sliding scale approach to the Winter factors, under which a strong showing on the
21  balance of hardships may compensate for a lesser showing of likelihood of success. *See Where*
22  *Do We Go Berkeley v. California Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022).

## V.  DISCUSSION

24  **A.  Likelihood of Success on the Merits**

25  Starting with the first *Winter* factor, in which the Court considers the likelihood of success
26  on the merits, Petitioner contends that the Due Process Clause bars the Government from re-
27  detaining him without first providing a custody hearing where the Government would bear the
28  burden of proof to establish that Petitioner is a flight risk or danger to the community. (Doc. 6 at

4

11–20). Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).[3]

      1. <u>Petitioner Possesses a Protected Liberty Interest.</u>

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (holding that due process requires hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding the same as for probation); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding the same as for parole). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).[4]

Petitioner's release on bond similarly allowed him to live in his community and be a primary caretaker of his elderly parents who live with him while he sought relief in his removal proceedings. These actions were made possible by Petitioner's freedom, which is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).

---

[3] Respondents' only argument in response is that Petitioner is subject to mandatory detention under the terms of 8 U.S.C. § 1225(b)(2)(A). (*See* Doc. 11). As noted above, Petitioner raises a *constitutional* challenge to his re-detention without a pre-deprivation hearing.

[4] In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

1 | Respondents contend that they nonetheless had discretion to re-detain Petitioner under section 1225(b). (Doc. 11 at 4–5). But while immigration officials may have had discretion over the initial decision to detain or release Petitioner, their decision to release an individual from custody creates "an implicit promise" upon which an individual may rely: that his liberty "will be revoked only if [he] fails to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482. As other courts have found in similar circumstances, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Therefore, even assuming Respondents' statutory argument were persuasive, despite the numerous cases in this circuit and across the country to the contrary, *see, e.g.*, *Josue I.C.A. v. Lyons*, No. 1:25-CV-01542-SKO (HC), 2025 WL 3496432, at *3 n.6 (E.D. Cal. Dec. 5, 2025), that authority would not relieve the Government from the obligations that stem from a released noncitizen's protected liberty interest.

The Court finds that Petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the Government may terminate Petitioner's liberty.

2. <u>Mathews Factors</u>

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

                    additional or substitute procedural safeguards; and finally, the
                    government's interest, including the function involved and the fiscal
                    and administrative burdens that the additional or substitute procedural
                    requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Importantly, the *Mathews* factors do not invite the Court to consider the specific facts related to the Government's ultimate justifications for any deprivation of a protected liberty interest. Indeed, "a first principle of Anglo–American jurisprudence, basic to the conception of due process in the procedural sense, is that the ends do not justify the means." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013) (quotation modified) (quoting *Pillsbury Co. v. F.T.C.*, 354 F.2d 952, 964 (5th Cir. 1966)); *see also* WE THE JUDGES 354 (Doubleday 1956). Or, put another way, "[i]t is process that the procedural due process right protects, not the outcome." *Id.* Before the Government is entitled to deprive a person of a protected liberty interest, the Government must establish the right to so deprive a person of that interest through a process designed to protect *any* person with that liberty interest, regardless of the ultimate outcome of such a process.[5]

---

[5] In ordering a response to the Motion for Temporary Restraining Order, Respondents were directed to "SHOW CAUSE as to whether there are any factual or legal issues in this case that render it distinguishable from the Court's prior orders in [*Luis Alberto R.C. v. Murray*, No. 1:25-CV-01618-KES-SKO (HC), 2025 WL 3648143 (E.D. Cal. Dec. 16, 2025); *Bilal A. v. Wofford*, No. 1:25-CV-01715-KES-HBK (HC), 2025 WL 3648366 (E.D. Cal. Dec. 16, 2025); *Elmer Joel M.C. v. Wofford*, No. 1:25-CV-01622-KES-CDB (HC), 2025 WL 3501200 (E.D. Cal. Dec. 6, 2025); *W.V.S.M. v. Wofford*, No. 1:25-CV-01489-KES-HBK (HC), 2025 WL 3236521 (E.D. Cal. Nov. 19, 2025)] and justify denying the petition, or indicate the matter is not substantively distinguishable." (Doc. 7). Respondents dedicate two sentences to distinguishing those cases, first noting "that *Bilal A. v. Wofford*, No. 1:25-CV-01715, deals with a different subsection of § 1225—subsection (b)(1), which deals with expedited removal," and then assert: "Petitioner has a lengthy criminal history and committed multiple violations of his release under the ISAP, which distinguish this case from the cases the Court cited," (Doc. 11 at 6).

Setting aside *Bilal A.*, the Court observes that Petitioner's criminal history entirely predates the original bond determination. So, when Petitioner was released in 2016, his record was considered and, nonetheless, the bond finding reflected a decision that he was neither dangerous nor a flight risk. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). And while Respondents represent that "[t]here are mandatory compliance requirements of the ISAP and failure to comply results in a redetermination of the release conditions or arrest and detention," (*id.* at ¶ 15), Respondents have provided no records outlining the mandatory compliance requirements, policy documents regarding the consequences for failure to comply, or any documentation confirming that Petitioner was provided with such information.

More importantly, the question here is not whether the ultimate outcome of Petitioner's re-detention can be successfully justified. Instead, the question is whether Petitioner received the process he was due prior to the deprivation of a protected liberty interest in his continued freedom. This Court has previously addressed the issue of what process is due where the Government seeks to deprive a person of a protected liberty interest in their continued freedom after their release, and the Court finds no reason to depart from the Court's reasoning in *Luis Alberto R.C.*, 2025 WL 3648143; *Elmer Joel M.C.*, 2025 WL 3501200, *W.V.S.M.*, 2025 WL 3236521. *Accord Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596 (E.D. Cal. July 14, 2025) (addressing a procedural due process

7

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for almost a decade. During that time, he established ties in the community, he became the sole caretaker of his elderly parents (both of whom are United States' citizens), including his father who is in hospice and requires constant care. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect," is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). As there have been no procedural safeguards to determine if Petitioner's re-detention is justified on the grounds set forth by Respondents only in the context of this litigation, "the probable value of additional procedural safeguards, *i.e.*, a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In Immigration Court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that Petitioner is entitled to a bond hearing, which

---

claim where Petitioner was re-detained without a pre-deprivation hearing after previously being release on bond); *see id.* at *3 ("Petitioner was released on bond by an immigration judge and then redetained without a hearing. This goes against Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release.").

The Court also notes that Respondents acknowledge that their primary argument that Petitioner is an "applicant for admission" "subject to mandatory detention under section 1225(b)(2)(A), has been "recently rejected" by "this and other courts." (Doc. 11 at 1 n. 1).

should have been provided before petitioner was re-detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("[a]pplying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty"). The Supreme Court has held that due process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782. Moreover, in light of the substantial public interest at issue, this circuit requires the Government to bear the burden of proving "by clear and convincing evidence that the [noncitizen] is a flight risk or danger to the community." *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011); *see Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) (holding that the government properly bore burden by clear and convincing evidence in court-ordered bond hearing); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (ordering pre-deprivation bond hearing in which the Government bears burden by clear and convincing evidence).

Given the absence of "evidence of urgent concerns,"[6] the Court concludes that "a *pre-deprivation* hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9. Numerous district courts have reached a similar conclusion. *See, e.g.*, *id.*; *Garcia*, 2025 WL 1927596, at *5; *Pinchi v. Noem*, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *3–4 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 787 F. Supp. 3d at 1093–95; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v.*

---

[6] While Respondents set forth eleven "violations" of the conditions of Petitioner's ISAP, nine of them are more than a year old and the two most recent violations are for missed check-ins in January and May 2025. In light of the age of most of the violations, along with the fact that Petitioner was arrested in the context of *complying* with an order to check in on December 3, 2025, the Court declines to consider these technical violations to be "evidence of urgent concerns." *See Bernal v. Albarran*, No. 25-CV-09772-RS, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025).

*Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). Petitioner is therefore likely to succeed on his habeas claim that his re-detention without a pre-deprivation hearing violates his due process rights.

### B. Irreparable Harm

Now that the Court has made a determination that Petitioner is likely to succeed on the merits, the Court turns to the second *Winter* factor, in which the Court examines whether but for preliminary injunctive relief Petitioner would suffer irreparable harm. *Winter*, 55 U.S. at 20. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure § 2948.1 (2d ed. 2004)). Given the Court's conclusion that Petitioner is likely to succeed on the merits of his claim that his detention without a bond hearing violates the Due Process Clause, Petitioner faces irreparable harm absent a preliminary injunction.

### C. Balance of Equities and Public Interest

As to the third and fourth *Winter* factors—the balance of equities and whether injunctive relief would be in the public interest—these two factors merge when the Government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Considering this combined factor here, the Court finds that although the Government has a strong interest in enforcing the immigration laws, the issue in this case is not whether the Government can re-detain Petitioner at all, but whether it can re-detain Petitioner without a bond hearing pending his removal proceedings. Faced with a choice "between [minimally costly procedures] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). The public interest also weighs in Petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are

staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

**D.     Remedy**

In conclusion, the Court finds that the requirements for issuing a preliminary injunction are met. Petitioner's immediate release is required to return him to the status quo ante—"the last uncontested status which preceded the pending controversy." *Pinchi*, 2025 WL 1853763, at *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18, 2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v. Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

**E.     Bond**

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, "[d]espite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quotation modified) (*quoting Jorgensen v. Cassiday*, 320 F.3d 909, 919 (9th Cir. 2003)). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen*, 320 F.3d at 919 (citing *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).

Neither party has addressed the issue of security in this case and the court finds no security is required here as courts regularly waive security in cases like this one. *See, e.g.*, *Zakzouk v. Becerra*, No. 25-cv-6254 KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025) (collecting cases).

## VI.    REQUEST FOR A STAY OF PROCEEDINGS

In their answer to the Petition and opposition to the Motion for Temporary Restraining Order, Respondents request that these proceedings be held in abeyance pending the outcome of the appeal in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). (Doc. 11 at 6). Respondents assert that the appeal raises the same issue regarding the application of section 1225 versus section 1226 and is set for oral argument in February 2026. *Id.* While the Court is skeptical that any decision in *Rodriguez Vazquez* will have any bearing on the procedural due process claim at issue in the present case, Petitioner does not oppose the Petition being held in abeyance after a decision on Petitioner's Motion for a Temporary Restraining Order. (Doc. 12 at 6).

As addressed above, the Court finds that Petitioner has demonstrated a likelihood of success on the merits and the irreparable harm he will suffer in the absence of relief is substantial. In these circumstances, the Court will not delay preliminary injunctive relief. However, due to Petitioner's non-objection to holding the Court's consideration of the Petition in abeyance, the Court will stay consideration of the merits of the Petition.

## VII.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for a Temporary Restraining Order, (Doc. 6), is CONVERTED to a Motion for a Preliminary Injunction and GRANTED.

2. Respondents must IMMEDIATELY RELEASE Petitioner Fernando A.G. from custody under the same conditions of release to which he was subject prior to his December 3, 2025, detention. Respondents shall not impose any additional restrictions on Petitioner, unless such restrictions are determined to be necessary at a future pre-deprivation / custody hearing.

3. By no later than January 11, 2026 at 9:00 AM PST, Respondents SHALL file a status report confirming Petitioner's release.

4. Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation

bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

5. The bond requirement of Federal Rule of Civil Procedure 65(c) is WAIVED.

6. The Court's consideration of the merits of the Petition is STAYED pending the outcome of the appeal in *Rodriguez Vazquez v. Bostock*, No. 25-6842 (9th Cir.). Within seven (7) days of the Ninth Circuit's decision in *Rodriguez Vasquez*, Petitioner and Respondents are ORDERED to file a joint status report notifying the Court of the decision and indicating their position as to whether supplemental briefing is necessary. This stay does not affect the IMMEDIATE RELEASE of Petitioner Fernando A.G. from custody as set forth in paragraph 2 above.

IT IS SO ORDERED.

Dated: **January 9, 2026**            /s/ *Sheila K. Oberto*
                                      UNITED STATES MAGISTRATE JUDGE